O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALFONSO SOTO MURILLO,** | ) **NO. CV 12-3402-MAN** |
| **Plaintiff,** | ) |
| | ) **MEMORANDUM OPINION** |
| **v.** | ) **AND ORDER** |
| **CAROLYN W. COLVIN,[1]** | ) |
| **Acting Commissioner of Social** | ) |
| **Security,** | ) |
| **Defendant.** | ) |

Plaintiff filed a Complaint on April 19, 2012, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for a period of disability ("POD") and disability insurance benefits ("DIB").  On January 24, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  The parties filed a Joint Stipulation on January 11, 2013, in which:  plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.

---

[1]   Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action.  (*See* Fed. R. Civ. P. 25(d).)

1

2

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

3

4        On June 2, 2008, plaintiff filed an application for a POD and DIB, alleging an inability to

5   work since January 18, 2006, due to "[a]rthritis, protruding discs 4-7 and lower lumbar,

6   degener[ative disc disease]." (A.R. 80-82, 91.)  At the reconsideration level, plaintiff additionally

7   alleged that he suffers from "severe spinal ste[n]osis and radicillspathy [sic], degenerative disc

8   disease, [and] osteoarthritis in [his] arms along with unbearable pai[n]," which commenced on

9   January 21, 2007.  (A.R. 106.)

10        The Commissioner denied plaintiff's claim initially, and upon reconsideration.  (A.R. 65-69,

11  71-75.)  On March 9, 2010, plaintiff, who was represented by counsel, appeared and testified at

12  a hearing before Administrative Law Judge Lawrence D. Wheeler (the "ALJ").  (A.R. 345-90.)

13  Ronald K. Hatakeyama, a vocational expert ("VE"), also testified.  (*Id.*)  On March 23, 2010, the

14  ALJ denied plaintiff's claim (A.R. 15-36), and the Appeals Council subsequently denied plaintiff's

15  request for review of the ALJ's decision (A.R. 5-8).  That decision is now at issue in this action.

16

17                          ## SUMMARY OF ADMINISTRATIVE DECISION

18

19        The ALJ found that plaintiff had not engaged in substantial gainful since January 18, 2006,

20  the alleged onset date.[2]  (A.R. 17.)  The ALJ determined that plaintiff has the severe impairments

21  of "cervical spine stenosis, cervical radiculopathy, left torn rotator cuff, bilateral osteoarthritis of

22  the knees, and obesity," but he does not have an impairment or combination of impairments that

23  meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

24  Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (A.R. 17, 24.)

25

26

27        [2]        Following the administrative hearing, plaintiff submitted a Motion To Amend Onset

28  from January 18, 2006, to November 1, 2008.  (A.R. 15.)  The ALJ denied this Motion.  (A.R. 28.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform "light work as defined in 20 C.F.R. [§] 404.1567(b) except he can only occasionally crouch, stoop, kneel, crawl, balance or bend." (A.R. 25.)  Plaintiff is also "precluded from work involving ladders, ropes or scaffolds." (*Id.*)

The ALJ found that plaintiff was unable to perform his past relevant work ("PRW") as a "mill wright / welder." (A.R. 34.)  Additionally, after having considered plaintiff's age, education, work experience, and RFC, the ALJ found that other jobs exist in the national economy that plaintiff could perform, including "assembler - small products" and "cashier." (A.R. 35.)  Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since January 18, 2006, the alleged onset date.  (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance."  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

## DISCUSSION

Plaintiff alleges the following three issues: the ALJ failed to properly consider the opinions of his treating physicians, and thus, the RFC assessment was not supported by substantial evidence; the ALJ failed to properly consider plaintiff's subjective complaints; and the ALJ erred in relying on the VE's response to his improper hypothetical question. (Joint Stipulation ("Joint Stip.") at 3.)

**I.    The ALJ Failed To Give Specific And Legitimate Reasons For Rejecting The Opinions Of Drs. Tushla, Singer, And Kennedy, And For Relying, Instead, On The Opinions Of Dr. Payam And State Agency Physicians.**

An ALJ is obligated to take into account all medical opinions of record. 20 C.F.R. § 404.1527(d). It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical

4

testimony.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant.  Magallanes, 881 F.2d at 751.  When a treating physician's opinion is not contradicted by another physician, it may be rejected only based upon "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When contradicted by another doctor, the opinion of a treating or examining physician may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record.  *Id.*  It is well established that when a treating physician's opinion is contradicted, the ALJ must assess its persuasiveness in view of specified factors, including the "length of the treatment relationship and the frequency of examination"; the "nature and extent of the treatment relationship"; and the consistency of the treating physician's opinion "with the record as a whole."  Orn, 495 F.3d at 631.

In determining plaintiff's RFC, the ALJ noted that "[i]n balancing the treating and consulting sources, and when the objective evidence is considered as well, the undersigned finds that the restriction to light exertion activity is reasonable."  (A.R. 33.)  Notably, however, the ALJ never specifically identified the physician's opinion upon which he relied in determining the extent of plaintiff's limitations.

Although not explicitly stated, it appears that the ALJ afforded the greatest weight to the opinions of examining physician Dr. Khodam-Rad Payam and  State Agency reviewing physicians G. Spellman and J. Mitchell.  Many of their limitations are reflected in the ALJ's RFC assessment

1    for plaintiff.[3]  (A.R. 25.)

2

3        The ALJ did not give substantial weight to the opinions of plaintiff's treating physicians Drs.

4    Tushla, Singer, and Kennedy.[4]  (A.R. 30-33.)  At the direction of Drs. Tushla, Singer, and Kennedy,

5    extensive objective medical testing was conducted on plaintiff.  Based on the results of such

6    objective testing, as well as their ongoing examinations and treatment of plaintiff, each of the

7    physicians ultimately concluded that plaintiff was either disabled or able to perform work at less

8    than the sedentary level.  Notwithstanding the extra weight to which the opinions of plaintiff's

9    treating doctors were entitled, the ALJ implicitly dismissed their opinions without providing legally

10   sufficient reasons for doing so.  *See* Orn, 495 F.3d at 633(finding treating physicians' opinions

11   entitled to additional weight based on supportability and consistency with the record on the

12   whole); 20 C.F.R. § 404.1527(d)(3)-(5).

13

14            A.     Dr. Michael Tushla

15

16       In a January 2, 2007 letter, Dr. Michael Tushla noted that plaintiff had been a patient of

17   his for the "last nine years."  (A.R. 127.)  Dr. Tushla opined that plaintiff suffers from "numerous

18   chronic health problems[,] including metabolic syndrome, hypogonadism, chronic anxiety,

19   degenerative disc disease of the cervical spine, torn left rotator cuff, and osteoarthritis in both

20

21       [3]     On August 19, 2008, one-time examining physician Dr. Payman opined that plaintiff:
     could lift and carry 20 pounds occasionally and 10 pounds frequently; could stand and walk six
22   hours in an eight-hour day; has full use of his hands for fine and gross manipulative movements;
     could frequently bend, kneel, stoop, crawl, and crouch; may perform overhead activities without
23   limitations; and does not need an assistive device.  (A.R. 189-93.)  On September 8, 2008, State
     Agency reviewing physician G. Spellman largely agreed with Dr. Payman's RFC assessment of
24   plaintiff, but added the following limitations to plaintiff's functional abilities:  plaintiff can only
     occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and plaintiff can never
25   climb ladders/ropes/scaffolds.  (A.R. 195-02.)  On September 17, 2008, State Agency reviewing
     physician J. Mitchell affirmed Dr. Spellman's RFC assessment of plaintiff.  (A.R. 203-05.)
26

27       [4]     Although the Commissioner now offers other reasons to explain the ALJ's rejection
     of the opinions of Drs. Tushla, Singer, and Kennedy, the Court cannot entertain these post hoc
     rationalizations.  *See, e.g.*, Orn, 495 F.3d at 630 ("We review only the reasons provided by the
28   ALJ in the disability determination and may not affirm on a ground upon which he did not rely").

shoulders." (*Id.*)  Dr. Tushla concluded that plaintiff, who "formerly worked in construction," was "unable to do that type of work because of chronic neck and shoulder pain." (*Id.*)  Dr. Tushla also indicated, while plaintiff "had epidural injections in his neck and is taking medications on a regular basis," Dr. Tushla had "little information regarding these complaints," because plaintiff was being treated for them by Dr. Nathan Singer.  (*Id.*)

In a November 12, 2007 letter, Dr. Tushla opined that plaintiff was disabled because of "numerous chronic health problems." (A.R. 134.)  He stated that plaintiff suffers from "cervical spine stenosis, chronically torn left rotator cuff, hypogonadism, hypertension, and disabling anxiety." (*Id.*)  He also noted that plaintiff has "neck pain, low back pain, numbness in his arms and legs, and extensive fatigue." (*Id.*)

On October 6, 2008, Dr. Tushla completed a "Physical Residual Functional Capacity Questionnaire" in which he diagnosed plaintiff with, *inter alia*, cervical spinal stenosis, arthritis, hypertension, and metabolic syndrome. (A.R. 301-04.)  Dr. Tushla also noted that plaintiff suffers from neck pain, arm numbness, nocturia, palpitations, and intermittent chest pain and that most of plaintiff's medications cause side effects.[5] (A.R. 301.)  Dr. Tushla opined that plaintiff:  could lift and/or carry less than ten pounds frequently and ten pounds occasionally; could stand and/or walk less than two hours and sit about six hours in an eight-hour workday; did not need an assistive device to stand and/or walk; but would need to shift positions due to pain and stiffness. (A.R. 302.)  Dr. Tushla further opined that:  plaintiff's pushing and pulling abilities in the upper and lower extremities would be limited due to neck pain and arm weakness; plaintiff could occasionally bend, crouch, and balance and frequently reach, handle, and finger; and plaintiff had certain other visual and environmental limitations.  (A.R. 303.)

In addressing Dr. Tushla's medical opinions, the ALJ gave "considerable weight" to the

---

[5]     These medications include, *inter alia*, Flexeril, Vicodin, and Ambien.  (A.R. 301.)

7

opinion contained in Dr. Tushla's January 2, 2007 letter that plaintiff "lack[ed] the functional capacity to return to past work," but the ALJ explicitly rejected Dr. Tushla's November 12, 2007 letter insofar as it reflected his opinion that plaintiff was disabled and could not work. (A.R. 31.) The ALJ correctly observed that "[w]hether [plaintiff] can be found 'disabled' is a finding reserved to the Commissioner." (*Id.*) Thus, the ALJ provided a specific and legitimate reason for disregarding Dr. Tushla's ultimate conclusion in his November 12, 2007 letter, that is, that plaintiff is disabled. 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"); Boardman v. Astrue, 286 Fed. App'x 397, 399 (9th Cir. 2008)(the "ALJ is correct that a determination of a claimant's ultimate disability is reserved to the Commissioner, and that a physician's opinion on the matter is not entitled to special significance").

However, to the extent that Dr. Tushla's treatment notes, diagnoses, and opinions regarding plaintiff's functional limitations, as distinguished from his ultimate legal conclusion about plaintiff's disability, merited consideration as the medical opinion of plaintiff's long-time treating physician the ALJ did not provide appropriate reasons for rejecting Dr. Tushla's medical findings and conclusions. For example, in considering Dr. Tushla's January 2, 2007 letter, the ALJ rejected Dr. Tushla's diagnoses of "hypogonadism" and "metabolic syndrome," because they were not documented in Dr. Tushla's clinical progress notes. (A.R. 31.) However, the ALJ's reasoning is not legitimate, because Dr. Tushla's diagnoses *are* documented in his clinical progress notes. (*See, e.g.,* A.R. 129 (1/2/07 - metabolic syndrome and hypogonadism); A.R. 130 (9/29/06 - hypogonadism).) Further, the ALJ failed to provide any reason for rejecting Dr. Tushla's other diagnoses in his January 2, 2007 letter, including chronic anxiety, degenerative disc disease of the cervical spine, osteoarthritis in both shoulders, and chronic neck and shoulder pain. Further, the ALJ proffered no reason for rejecting Dr. Tushla's opinion, in his November 12, 2007 letter, that plaintiff had, *inter alia,* disabling anxiety as well as neck pain, low back pain, numbness in his arms and legs, and extensive fatigue.

The ALJ also did not provide appropriate reasons for affording "minimal weight" to Dr. Tushla's opinions as set forth in the Questionnaire.  The ALJ stated that he gave less weight Dr. Tushla's opinions primarily because:  Dr. Tushla's RFC assessment was inconsistent with Dr. Tushla's opinion that "no assistive device was required" and that plaintiff's ability to sit was unrestricted; "[n]o objective findings are listed . . . in support of [Dr. Tushla's] extreme functional limitations" of plaintiff; and Dr. Tushla is not an orthopedist.  (A.R. 32.)  As discussed below, these reasons were neither specific nor legitimate reasons for rejecting Dr. Tushla's opinions.

The ALJ's first reason for rejecting Dr. Tushla's opinions is unpersuasive.  The ALJ noted that, although Dr. Tushla opined that plaintiff could do less than sedentary work, Dr. Tushla did not restrict plaintiff's sitting abilities and gave no indication that plaintiff required any assistive device.  (A.R. 32.)  However, Dr. Tushla's findings -- that plaintiff did not require an assistive device and had an unrestricted ability to sit -- appear to be wholly consistent with his RFC assessment of plaintiff as having the ability to perform less than sedentary work.[6]

The ALJ's second reason for rejecting the opinion of Dr. Tushla -- *to wit*, that Dr. Tushla's "extreme functional limitations" are not supported by the objective medical evidence, including x-rays -- is both conclusory and incorrect.  *See* Regennitter v. Comm'r of SSA, 166 F.3d 1294, 1299 (9th Cir. 1999)(noting that "conclusory reasons will not justify an ALJ's rejection of a medical opinion"); Embrey v. Bowen, 849 F.2d 418, 421–22 (9th Cir. 1988)("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . .   The ALJ must do more than offer his conclusions.   He must set forth his own interpretations and explain why they, rather than the doctors', are correct.")(footnote omitted).

---

[6]     Under 20 C.F.R. § 404.1567, sedentary work involves:  lifting no more than 10 pounds at a time, and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Contrary to the ALJ's statement, Dr. Tushla's Questionnaire is indeed supported by his own objective findings, as well as by highly sophisticated imaging, such as MRIs. (*See, e.g.,* A.R. 306, 10/09/08 ("Positive McMurray's about the right knee" and neck exhibited "[l]imited range of motion with pain"); A.R. 139, 04/17/02 (neck exhibits "[t]enderness with lateral rotation"; musculoskeletal exhibits "rotator cuff weakness on the left with weakness of the supraspinatus tendon"; noting that an MRI of left shoulder indicates "evidence of osteoarthritis in the left AC joint and torn left supraspina[l] tendon"; and an MRI of plaintiff's cervical spine shows "disc protrusion and spinal stenosis," as well as evidence of "nerve root compression on the right at C5-6").)

Finally, the ALJ gave "minimal weight" to Dr. Tushla's opinion, because "while a treating source, [he] is not an orthopedist." (A.R. 32.) Although more weight is generally given to the opinions of a specialist about medical issues related to his area of specialty than to the opinions of a source who is not a specialist, this maxim is not dispositive of whether the ALJ correctly assessed Dr. Tushla's opinion, because an ALJ is obligated to take into account all medical opinions of record. Further, it is not, by itself, a reason to reject a treating doctor's opinion. *See* Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment."). Thus, that Dr. Tushla was not an orthopedist does not constitute a legitimate reason for rejecting his opinions.

In sum, the ALJ attempted to discredit Dr. Tushla's opinion based on improper grounds and by ignoring competent evidence in his progress notes concerning plaintiff. Accordingly, the ALJ did not provide specific and legitimate reasons for discrediting Dr. Tushla's opinions.

///

///

10

B.     Dr. Nathan Singer

In a November 15, 2008 letter, treating physician Dr. Nathan Singer noted that, at the time, he had been treating plaintiff for the past six years for "severe and debilitating pain of the neck, arms, low back and legs." (A.R. 339.)  He noted that plaintiff suffered from "cervical spinal stenosis with radiculopathy, torn left rotator cuff, lumbar facet arthoropathy[,] and osteoarthritis of both knees with complicating meniscal tears." (*Id.*)  Dr. Singer opined that plaintiff was "no longer able to work and should be considered fully disabled." (*Id.*)  The ALJ found Dr. Singer's letter unpersuasive, because Dr. Singer did not refer to any objective finding in support of his diagnoses and, further, because his ultimate opinion -- that plaintiff is "fully disabled" -- is a determination left to the Commissioner. (A.R. 32-33.)

The ALJ's first reason for rejecting the opinion of Dr. Singer -- that Dr. Singer's letter does not refer to objective findings (*e.g.,* MRI scans, CTS, x-rays, EMG testing, etc.) that support his diagnoses -- is unpersuasive. (A.R. 32.)  Although Dr. Singer does not refer to specific objective findings in his letter, Dr. Singer's treatment notes contain significant objective findings that support his diagnoses of plaintiff.  Significantly, between 2006 and 2008, Dr. Singer performed numerous cervical epidural injections on plaintiff due to, *inter alia*, "cervical spinal stenosis," "cervical radiculopathy," and "lumbosacral radiculopathy," and because plaintiff's "[c]hronic neck and bilateral arm pain[] was unresponsive to medical management." (A.R. 208-09 (10/10/08); A.R. 232-33 (10/03/08); A.R. 244 (09/26/08); A.R. 273 (06/09/06); A.R. 275 (05/23/06); A.R. 277 (08/09/05); A.R. 335-36 (12/01/08).)  Dr. Singer also performed numerous lumbar facet block procedures on plaintiff to treat plaintiff's "lumbar facet arthropathy," "lumbosacral disk disease," and "sacroiliitis," and because plaintiff's chronic low back pain was unresponsive to conservative medical management. (A.R. 220-21 (10/24/08); A.R. 256-57 (09/19/08); A.R. 267 (01/11/07); A.R. 269 (12/15/06).)

Also included in Dr. Singer's records were several MRI results.  A March 14, 2002 MRI of

11

plaintiff's cervical spine reflected, *inter alia*, "[r]ight posterolateral disk protrusion and spondylosis producing moderately severe right lateral recess and foraminal stenosis at C5-6"; "[s]uspected right C6 nerve root compression"; "[s]mall far right lateral disk protrusion and prominent right-sided neural foraminal stenosis at C6-7"; "[p]ossible right C7 nerve root compression"; and "[s]mall disk protrusion, spondylosis, moderate spinal stenosis, and bilateral foraminal narrowing at C4-6." (A.R. 288-89.) A March 26, 2002 MRI of plaintiff's left shoulder revealed "[h]igh grade partial to complete rotator cuff tear, specifically involving the supraspinatus tendon," and "[o]steoarthritic changes of the left AC joint and rotator cuff tendinosis." (A.R. 290.) A November 6, 2004 MRI of plaintiff's lumbar spine revealed "2mm disc bulges at L1-L2, L3-L4, and L5-S1 with 3mm disc bulges at L2-L3 and L4-L5"; "[m]ild bilateral foraminal narrowing is noted from L2-L3 through L5-S1"; and "[m]ild facet hypertrophy at L4-L5 and L5-S1 is noted." (A.R. 289.) A November 6, 2004 MRI of plaintiff's cervical spine revealed "slight anterolisthesis of C2 on C3 and C3 on C4"; "3 mm disc osteophyte complexes at C3-C4 and C6-C7 and 4mm disc osteophyte complexes at C4-C5 and C5-C6"; and "right neural foraminal narrowing at C3-C4 and bilateral neural foraminal narrowing at C4-C5 and C5-C6." (A.R. 281.) A May 26, 2006 MRI of plaintiff's lumbar spine confirmed that there was an "inferior tilt with multi-level bulges which tend to lateralize resulting in possible left sided neural impingement at L2 and L3 and possible right sided neural impingement at L5-S1"; "mild to moderate central stenosis at L2-3 through L4-5 greatest at L4-5"; and "[o]ther more minor findings." (A.R. 279.) Dr. Singer also reviewed a July 1, 2002 nerve conduction velocity study that indicated a "moderate left C6 radiculopathy, acute and chronic." (A.R. 185.) The ALJ therefore erred in finding that Dr. Singer's opinion lacked objective medical support in the record.

The ALJ's second reason for rejecting the opinion of Dr. Singer is misguided. Again, as discussed above, a physician's conclusion on the ultimate issue of disability status is not determinative or entitled to any special weight. 20 C.F.R. § 404.1527(d)(1); *see also* McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011)("A disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects

ability to engage in gainful activity."). However, "a treating physician's *medical* opinions are generally [entitled] to more weight." Boardman, 286 Fed. Appx. at 399 (citing 20 C.F.R. § 404.1527(d)(2)). A medical opinion "'reflect[s] judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions.'" *Id.* (citing 20 C.F.R. § 416.927(a)(2)). Here, in addition to concluding that plaintiff was "fully disabled," Dr. Singer made specific findings in his letter, based on objective medical evidence, regarding plaintiff's diagnoses and symptoms. Thus, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence, for rejecting those specific findings, which he failed to do.[7]

Accordingly, the ALJ should revisit his consideration of Dr. Singer's opinion on remand. The ALJ then must give this opinion the deserved weight or give appropriate reasons for rejecting it.

C.    Dr. Edwin Kennedy

In a September 29, 2009 letter, treating physician Dr. Edwin L. Kennedy noted that he had been treating plaintiff for "bilateral knees and elbow degenerative changes, [c]ervical, [d]orsal, [l]umbar [("CDL")], [s]pondylosis, multiple sites [o]steoarthritis tendonitis" and opined that plaintiff was disabled. (A.R. 308.)

In a February 22, 2010 "Physical Residual Functional Capacity Questionnaire," Dr. Kennedy noted that he had been treating plaintiff monthly since April 1, 2009. (A.R. 309.) He diagnosed plaintiff with "[d]egen[erative] disc C-spine stenosis, [d]egen[erative] disc in lumbar with stenosis,

---

[7]    Moreover, while it is true that medical source opinions on issues reserved to the Commissioner, such as the determination of claimant's ultimate disability, are not determinative or entitled to special weight based on the source of the medical opinion, it is not true that the Commissioner is free to disregard this information. Social Security Ruling ("SSR") 96–8p. Rather, the ALJ is instructed to consider such opinions in adjudicating a disability claim. *Id.*

[r]adic complaints, [a]rthritis [upper extremity], knees myospasm." (*Id.*) Dr. Kennedy opined that plaintiff would be unable to work due to medication side effects of drowsiness and dizziness. (*Id.*) He opined that plaintiff:  could lift and/or carry ten pounds occasionally; could stand and/or walk less than two hours and sit less than six hours in an eight-hour workday; would need to use a cane; would need to frequently change positions due to his arthritis; would be limited in pushing/pulling in both the upper and lower extremities; could occasionally crouch and balance, but never bend, climb, kneel and crawl; and could occasionally reach, handle and finger. (A.R. 310-11.)

The ALJ did not give controlling weight to Dr. Kennedy's opinions, because:  (1) his medical specialty was not identified; (2) he offered an opinion on an issue reserved for the Commissioner; (3) his opinion is not supported by objective medical evidence; (4) he indicated that plaintiff's "condition was worse, subsequent to 'failed' knee surgeries . . . but there is no evidence in the exhibit file that [plaintiff] underwent multiple or bilateral knee surgeries"; and (5) he opined that a cane was medically necessary, but plaintiff did not use a cane all the time.  (A.R. 33.)

The ALJ's first reason -- that Dr. Kennedy's specialty was not identified -- is not a legitimate reason for rejecting Dr. Kennedy's opinion.  If the ALJ questioned Dr. Kennedy's specialty, the ALJ should have conducted an "appropriate inquiry" by re-contacting Dr. Kennedy.  *See* Sims v. Apfel, 530 U.S. 103, 110–11, 120 S. Ct. 2080, 2085 (2000); *see also* Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)(noting that "[i]f the ALJ thought he needed to know the basis of [the doctors'] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry").

The ALJ's second reason for rejecting Dr. Kennedy's opinion -- that he "offered an opinion on an issue which is reserved to the Commissioner" -- is, again, not legitimate.  (A.R. 33.)  Beyond finding that plaintiff was unable to work, as described in detail *supra*, in both his letter and Questionnaire, Dr. Kennedy set forth his diagnoses of plaintiff's medical condition and his opinions regarding plaintiff's limitations and restrictions resulting from his medical condition and related

14

1  pain.  Rather than affording weight to Dr. Kennedy's medical opinions regarding plaintiff's pain,

2  limitations, and restrictions, the ALJ apparently rejected them in toto on the ground that Dr.

3  Kennedy rendered a non-dispositive opinion regarding plaintiff's RFC.  The ALJ's reasoning,

4  however, does not constitute a legitimate reason, as required, for rejecting Dr. Kennedy's opinion.

5  *See* Boardman, 286 Fed. Appx. at 399 (finding that "while [the fact that the treating physician

6  expressed an opinion regarding Boardman's ultimate disability and residual functional] may be a

7  specific reason to reject a treating physician's medical opinion, it is not a legitimate one").

8

9      The ALJ's third reason -- that Dr. Kennedy "lists complaints of pain, reduced range of

10  motion and knee effusion as the medical evidence on which he's based his functional limitations

11  restrictions, rather than objective imaging" (A.R. 33) -- is neither specific, nor legitimate, because

12  the ALJ mischaracterizes Dr. Kennedy's notes.  Dr. Kennedy did not assert, as the ALJ contends,

13  that his assessment was based on plaintiff's complaints of pain, reduced range of motion, and

14  knee effusion.  (A.R. 33.)  Rather, on the Questionnaire, Dr. Kennedy responds, "[c]hronic [CDL]

15  pain, [upper extremity] joint [and] hand pain burning, [bilateral] knee - osteoarthritis with

16  effusion, epicondylitis" to the question asking him to list the "patient's symptoms, including pain"

17  and if the patient has pain, to "characterize the nature, location, frequency, precipitating factors,

18  and severity of your patient's pain."  (A.R. 309.)  Indeed, when asked to "[i]dentify the clinical

19  findings and objective signs" that support his opinion, Dr. Kennedy responded, "[r]educed [range

20  of motion CDL] spine moderate, palpation [plus] 2 tender all areas  [CDL], knees, epicondylitis."

21  (*Id.*)  Thus, Dr. Kennedy's functional restrictions are not only supported by what he found on

22  physical exam of plaintiff but also by a bone scan of plaintiff's knees showing degenerative knee

23  changes. (*See* A.R. 309; A.R. 329 (04/13/09, "decreased [ROM] CDL" and "limps"), A.R. 328

24  (05/11/09, decreased ROM CDL and gait was weak on right side); A.R. 327 (07/06/09, gait was

25  stiff, slow, and deliberate and tenderness to palpation); A.R. 326 (07/07/09, ROM decreased,

26  limps on right, and tenderness to palpation); A.R. 323-33 (09/01/09, decreased ROM, bilateral

27  elbows tender, and decreased left hand); A.R. 319-20 (09/29/09, stiffness in all joints, gait was

28  slow and deliberate and a bone scan showed degenerative knee changes); A.R. 317-18 (10/27/09,

ROM stiff and limited, pain on palpation in multiple areas, stiffness in joints, gait was stiff and numbness in fingers); A.R. 313-14 (11/24/19, decreased ROM, mile crepitus in cervical spine, tenderness to palpation and numbness in upper and lower extremities.) Moreoever, the ALJ failed to state how the record did not fully support Dr. Kennedy's conclusions.  To disregard a treating physician's opinion, the ALJ must "set out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986).  In this case, the ALJ offered only his conclusion, and thus, he failed to reject the opinion of plaintiff's treating physician in a proper manner. Consequently, the ALJ's assertion that Dr. Kennedy's opinion lacked an objective basis does not constitute proper reason for giving the opinion of Dr. Kennedy limited weight.

The ALJ's next rejected Dr. Kennedy's opinion, because Dr. Kennedy indicated plaintiff's "condition was worse, subsequent to 'failed' knee surgeries . . . [,] but there is no evidence in the exhibit file that [plaintiff] underwent multiple or bilateral knee surgeries."  (A.R. 33.) The ALJ concluded that "Dr. Kennedy's assessment . . . appear[s] to be based on medical evidence which is not part of the record," or "[i]t also is possible that Dr. Kennedy has relied exclusively on [plaintiff]'s description of his surgical history."  (Id.)  This reason for rejecting Dr. Kennedy's medical opinion is also unpersuasive.  Again, if the ALJ questioned whether additional evidence formed the basis for Dr. Kennedy's opinion, the ALJ should have conducted an "appropriate inquiry" by re-contacting Dr. Kennedy.  Moreoever, as discussed above, Dr. Kennedy's own treatment notes support the limitations with which Dr. Kennedy assessed plaintiff.

Finally, the ALJ rejected Dr. Kennedy's "extreme functional restrictions," because despite Dr. Kennedy's recommendation that a cane was medically necessary, plaintiff admitted that "he does not use a cane all the time."  (A.R. 33.)  This argument does not constitute a specific and legitimate reason for rejecting his medical opinion for the following reasons.  At the hearing, plaintiff testified that he had knee surgery in December 2008.  (A.R. 380.)  After his surgery, he used crutches for about two weeks.  (Id.)  He then began using a cane for only a "little while,"

1    because "they told me to -- to try to exercise it," so, that is "what I would do and use [the cane]

2    as needed." (*Id.*)  By the time of the hearing, plaintiff testified that he been using the cane every

3    day for the past "at least eight months, seven months." (A.R. 381.)

4

5    The ALJ argues that plaintiff's statement, that he had been using his cane every day for

6    the past seven or eight months, is inconsistent with his statement to Dr. Kennedy, in July 2009,

7    that he was only occasionally using a cane. (A.R. 33.) As a result, the ALJ infers that plaintiff was

8    not in need of a cane all the time.   However, plaintiff's statements do not appear to be

9    inconsistent with each other.  In July 2009, which is approximately eight months prior to the

10   hearing date, plaintiff told Dr. Kennedy he was only using the cane occasionally.  Thus, it is not

11   inconsistent with plaintiff's statement at the hearing that he had been using his cane every day

12   for the past seven or eight months (that is, since his July 2009 appointment with Dr. Kennedy).

13   Consequently, the ALJ was incorrect to conclude that plaintiff was not, at least as of the date of

14   the hearing, in need of his cane all the time.

15

16   For the aforementioned reasons, the ALJ failed to properly reject the opinion of Dr.

17   Kennedy.   On remand, the ALJ must provide reasons in accordance with the requisite legal

18   standards, if such reasons exist, for discrediting Dr. Kennedy's opinion.

19

20       D.    Dr. Payam and State Agency Physicians

21

22   Dr. Payam and the State Agency physicians, whose opinions the ALJ afforded "great

23   weight," did not (at the very least) review the reports of Dr. Kennedy, because Dr. Payam and the

24   State Agency physician's evaluations pre-date Dr. Kennedy's treatment notes and Questionnaire.

25   It also appears that neither Dr. Payam nor the State Agency physicians had the benefit of either

26   the September 12, 2008 MRI of plaintiff's right knee or the knowledge that plaintiff underwent a

27   "right knee arthroscopy with partial medial and lateral meiscectomy." (A.R. 330-33.) Therefore,

28   their assessment of plaintiff is not based on a sufficiently *complete* and *updated* picture of

17

1  plaintiff's condition.  The ALJ may determine that a consultative examination, based upon a

2  complete and updated review of the medical record, is appropriate under the circumstances.

3

4  **II.   On Remand, The ALJ Should Reassess Plaintiff's Credibility.**

5

6      Once a disability claimant produces objective medical evidence of an underlying impairment

7  that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective

8  testimony as to the severity of the claimant's symptoms must be considered.  Moisa v. Barnhart,

9  367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also*

10 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an

11 ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find

12 an applicant not credible by making specific findings as to credibility and stating clear and

13 convincing reasons for each."  Robbins, 466 F.3d at 883.  The factors to be considered in weighing

14 a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies

15 either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the

16 claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and

17 third parties concerning the nature, severity, and effect of the symptoms of which the claimant

18 complains.  *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §

19 404.1529(c).

20

21     Here, the ALJ concluded that "[a]fter careful consideration of the evidence, . . . [plaintiff]'s

22 medically determinable impairments could reasonably be expected to cause the alleged

23 symptoms."  (A.R. 27.)  Significantly, the ALJ cited no evidence of malingering by plaintiff.

24 Nonetheless, the ALJ determined that "[plaintiff]'s statements concerning the intensity,

25 persistence and limiting effects of [his] symptoms are not credible to the extent they are

26 inconsistent with the above [RFC] assessment." (*Id.*)  Accordingly, the ALJ's reasons for finding

27 that plaintiff was not credible with respect to his subjective symptom and pain testimony must be

28 "clear and convincing."

18

The ALJ rejecting plaintiff's subjective complaints primarily because: (1) objective medical evidence does not support plaintiff's pain allegations;[8] (2) plaintiff exaggerates his levels of pain, and his reported levels of pain are inconsistent; (3) plaintiff has been "less than fully compliant both with prescribed medication and with recommended home exercises and physical therapy"; (4) plaintiff is "shopping between providers . . . for medication, diagnostic statements, etc."; and (5) plaintiff reported no side effects of his medications. (A.R. 28-30.) For the following reasons, the Court finds that the reasons the ALJ provided for discounting plaintiff's symptom/pain testimony and credibility are not clear and convincing.

With respect to the ALJ's first ground, even assuming *arguendo* that the medical evidence did not corroborate the degree of plaintiff's allegations of disabling limitations, this factor cannot form the sole basis for discounting plaintiff's subjective symptom testimony. Burch, 400 F.3d at 681; *see* Bunnell, 947 F.2d at 347 (noting that "[i]f an adjudicator could reject a claim of disability simple because [plaintiff] fails to produce evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings"). Accordingly, because the ALJ's first ground cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony, the ALJ's credibility determination rises or falls with the ALJ's other grounds for discrediting plaintiff.

Next, the ALJ stated that the "[m]ost significant in the determination of [plaintiff]'s credibility is the repeated exaggeration of pain." (A.R. 28.) The severity of pain is difficult to describe objectively. Plaintiff used everyday expressions to convey the severity of his pain. The fact that he rated his pain above the 1-10 scale generally used -- and, despite the ALJ's determined efforts to make plaintiff conform his pain rating to a number within that scale, he

---

[8]   Specifically, the ALJ notes: (1) plaintiff's complaints of pain are not supported by the "MRI and other objective imaging reports" because they "do not reflect a gradually worsening cervical, thoracic or lumbar spine" and (2) plaintiff's "fear that his condition will deteriorate" is not supported by "objective and other medically acceptable evidence" ;and (3) plaintiff's complaint that his "(dominant) hand and arm was weaker," is not supported by the objective evidence. (A.R. 28-30.)

refused to drop his pain assessment from his stated 12-13 pain level -- is a legitimate reason for concluding that plaintiff exaggerates the level of his pain.  However, plaintiff's stubborn refusal to conform to the 1-10 scale posited by the ALJ appears to have improperly become the cornerstone for the ALJ's rejection of plaintiff's credibility and disability claim.

Further, the fact that plaintiff reported different levels of pain at different times to different physicians is not a convincing reason to discredit plaintiff's credibility.  SR 96–7p states that "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve over time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms."  Thus, the ALJ should have considered, in the light of SSR 96–7p, whether these variations in the levels of pain reported months apart by plaintiff truly indicate that plaintiff exaggerated the severity of his pain.

The ALJ's third reason for discrediting plaintiff -- that he is "less than entirely credible," because the "medical evidence documents non-compliance with recommended home exercise and physical therapy, as well as non-compliance with pain medication" -- is unpersuasive.  (A.R. 29; A.R. 313-20, 323-24.)   Plaintiff's lack of compliance with his physical therapy home exercise program does not automatically negate his credibility. SSR 96-07p stresses that adjudicators must first consider the underlying reasons why a claimant does not follow prescribed treatment before inferring a lack of credibility.  *See* SSR 96-07p ("the individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed *and there are no good reasons for this failure*.  However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.")(emphasis added).  Yet, the ALJ nowhere considered potential explanations for plaintiff's failure to comply fully with his physical therapy exercises.  Further, there is only one instance noted in which plaintiff was not compliant

with his medications (A.R. 326), which is not a reasonable or sufficient basis on which to infer widespread noncompliance, particularly given plaintiff's extensive medical history. Additionally, plaintiff's credibility is bolstered by the medical record as a whole, which demonstrates that he sought pain treatment and generally followed his providers' treatment recommendations other than with respect to home exercise. *See* SSR 96–7p ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.") Overall, the ALJ improperly failed to consider plaintiff's possible reasons for his limited medical non-compliance and ignored plaintiff's extensive record of seeking and following prescribed treatment.

The ALJ's fourth reason for discounting plaintiff's credibility -- that plaintiff "denied that at any time, he did *not* have side effects," which is inconsistent with the evidence in the record that "he expressly indicated he had no side effects" -- is unavailing.  (A.R. 30.)  At the hearing, in response to the ALJ's question of whether he had any side effects of his medication, plaintiff stated he has "aberrant behavior, you[] get -- you're anxious, you're mad, your -- you just -- you don't feel right, you're not the same." (A.R. 364.)  He testified that he has had this side effect since filling out his application, and there was never a time when he had no side effects.  (*Id.*) Plaintiff's statement is not inconsistent with the evidence of record.  The only reported side effect listed on plaintiff's initial disability application was "mood swings," allegedly caused by hydrocodone. (A.R. 95.)  Further, plaintiff's pain medications also include Vicodin, Oxycodone, Flexeril, and Dilaudid, which have the tendency to cause drowsiness, dizziness, and fatigue. (*See, e.g.,* A.R. 301 (Dr. Tushla noted that many of plaintiff's medications, including Vicodin, can cause fatigue); A.R. 309 (Dr. Kennedy noted that plaintiff's medications, including Dilaudid, Oxycodone, Vicodin, and Ambien cause drowsiness and dizziness).)  Thus, the ALJ's presumption that plaintiff did not report or suffer from any side effects is not supported by substantial evidence.  In any event, plaintiff's primary claim, as the ALJ also notes, is that he has too much pain all over his

1  body to do even light work.  (A.R. 28, 348.)  Accordingly, even if the ALJ properly discredited
2  plaintiff's report of side effects, this reason does not clearly and convincingly undermine his overall
3  credibility.[9]

4

5  The ALJ's final reason -- that plaintiff "asked Dr. Kennedy to prescribe[] Ambien, for
6  sleeping, because he could not get this medication from his California doctor," which "suggests
7  that [plaintiff] is shopping between providers . . . for medication, diagnostic statements, etc." --
8  is not convincing.  (A.R. 30.)  This rationale is speculative and unsupported by any evidence and,
9  thus, does not constitute a clear and convincing reason supported by substantial evidence for
10 discrediting plaintiff.  To the extent the ALJ also found plaintiff to be not credible because he was
11 "benefit-seeking," "[g]enerally speaking [] every claimant who applies for benefits seeks pecuniary
12 gain, and this fact does not indicate a lack of credibility."  Bell v. Colvin, 2013 U.S. Dist. LEXIS
13 43877, at *14 (C.D. Cal. March 20, 2013)(citing Ratto v. Sec'y, Dept. of Health & Hum. Servs., 839
14 F. Supp. 1415, 1428–29 (D. Or. 1993)(noting that "[i]f the desire or expectation of obtaining
15 benefits were by itself sufficient to discredit a claimant's testimony, then no claimant . . . would
16 be found credible")).

17

18 The reasons cited by the ALJ for finding that plaintiff lacks credibility with respect to his
19 claimed symptoms and pain are not legally adequate.  Accordingly, the ALJ's adverse credibility
20 finding is not supported by substantial evidence and is reversible error.

21 ///

22 ///

23 ///

24

25 

_____

26       [9]     To the extent the ALJ discredited plaintiff's complaints due to supposed inconsistencies relating to plaintiff's claimed lack of literacy, it also does not constitute a clear and
27 convincing reason.  (See A.R. 30.)  In response to the ALJ's question as to why plaintiff wrote that he had no side effects on his application, plaintiff explained, "I guess I don't read very well." (A.R.
28 365.)  Thus, a response to a specific question asked by the ALJ, is very different from stating that he is "functionally illiterate."  (A.R. 30.)

**III.    The ALJ Must Reconsider What Jobs Plaintiff May Be Able To Perform In View Of Plaintiff's Reconsidered RFC.**

Based on the foregoing, there are several matters the ALJ needs to review and reconsider on remand.  As a result, the ALJ's conclusion regarding plaintiff's RFC and plaintiff's ability to do work may change.  Therefore, the Court does not reach plaintiff's third claim, *to wit*, that the ALJ failed to pose a complete hypothetical to the vocational expert.

On remand, the ALJ must correct the above-mentioned deficiencies and errors.  After doing so, the ALJ may need to reassess plaintiff's credibility and RFC, in which case additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

**IV.    Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.*, Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be

useful).

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  September 27, 2013

_Margaret A. Nagle_
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

24